UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DISH NETWORK L.L.C.,

        Plaintiff,

    v.

INNETRA PC, et al.,

        Defendants.

Case No. 25-cv-03933-NW

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 17

On September 18, 2025, the Court deferred ruling on Defendants Innetra PC ("Innetra"), and Elna Paulette Belle's (collectively "Defendants") motion to dismiss, and granted Plaintiff DISH Network L.L.C. ("DISH") sixty-days to conduct limited jurisdictional discovery. ECF No. 34; Mot., ECF No. 17. The parties timely filed supplemental briefs outlining the jurisdictional discovery gathered. Plaintiff's Supp. Brief, ECF No. 52; Defendants' Supp. Brief, ECF No. 56.

The Court finds that DISH has not met its burden to demonstrate specific jurisdiction, and GRANTS Defendants' motion to dismiss.

## I. BACKGROUND

DISH is a limited liability company organized under Colorado law, with its principal place of business in Englewood, Colorado. Compl. ¶ 6. DISH "is one of the largest pay-tv providers in the United States and has millions of subscribers nationwide." *Id*. ¶ 1.

Defendant Innetra is a Limited Partnership organized and existing under the laws of the United Kingdom with a principal place of business in Caerphilly, Wales. Mot. at 6. DISH acknowledges that "Innetra is a self-described 'UK-based global company' that publicly markets itself as operating an international network platform." Opp'n to Mot., ECF No. 30 at 2. Innetra "offers high-bandwidth media streaming hosting" and "provides dedicated servers and virtual

private servers (VPS) to facilitate the transmission of content over the internet, enabling customers to deliver streaming services efficiently." Compl. ¶¶ 28, 29.  Defendant Belle is the General Partner of Innetra.  Compl. ¶ 8.  She is a citizen and resident of the Seychelles.  *Id*.

DISH alleges that Innetra, under Belle's management, "materially contributed to and induced" piracy of DISH's copyrighted works "by providing the servers and network infrastructure that" were used in piracy schemes carried out by third parties.  *Id*. ¶¶ 2, 3.  DISH contends that "Innetra had actual knowledge" of the piracy "because DISH, on hundreds of occasions, expressly requested that Innetra halt the specific infringing activities occurring on its servers and network."  *Id*. ¶ 4.  DISH brings three claims under 17 U.S.C. § 501: (1) materially contributing to copyright infringement; (2) inducing copyright infringement; and (3) vicarious copyright infringement.

## II.   LEGAL STANDARD

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Challenge to personal jurisdiction under Rule 12(b)(2) may be based on materials outside the complaint.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id*.  "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citations omitted).

## III.   DISCUSSION

Jurisdiction over Defendants, as foreign defendants, is governed by Federal Rule of Civil Procedure 4(k)(2).  Three requirements must be met in order to establish personal jurisdiction over foreign defendants who are not domiciled in any state under Rule 4(k)(2): (1) the claim against the

United States District Court
Northern District of California

2

defendant must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). The first two factors are uncontested. Mot. at 9; Opp'n at 6. The only remaining question for this Court to consider is whether the Court's exercise of personal jurisdiction over the Defendants would comport with due process. DISH appears to concede that there is no general jurisdiction over Defendants; only specific jurisdiction is at issue. Opp'n to Mot. at 5.

### A.    Specific Jurisdiction

Specific jurisdiction exists over Defendants if (1) they performed some act by which they purposefully directed their activities toward the United States or purposefully availed themselves of the privilege of conducting business in the United States, (2) DISH's federal copyright claims arise out of or result from Defendants' United States-related activities, and (3) the exercise of jurisdiction is reasonable. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (for foreign defendants, "rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole"). The plaintiff "has the burden on the first two prongs," but once both are established, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (internal citations omitted).

### 1.    Purposeful Direction

Courts generally apply the "purposeful direction" test when a case sounds in tort, as here. *Herbal Brands*, 72 F.4th at 1090; *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1041 (9th Cir. 2022) (applying the purposeful direction test in an action for copyright infringement). "To determine whether a defendant 'purposefully directed' its activities toward the forum, we apply, in turn, the 'effects' test derived from *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)." *Herbal Brands*, 72 F.4th at 1091. "The *Calder* effects test asks whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal citations omitted).

3

### a.    Intentional Act

As to the first *Calder* factor, Defendants offer "media streaming" services via their website.  Because Defendants intend to perform an action in the real world to offer customers services and host their website, they have committed an intentional act.  *Schwarzenegger*, 374 F.3d at 806 (an intentional act refers to "an intent to perform an actual, physical act in the real world."); *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014) (the "threshold of what constitutes an intentional act is relatively low.").

### b.    Express Aiming

The Court focuses on the second *Calder* factor: whether Defendants expressly aimed their actions at the United States.  In the September 18, 2025 Order, the Court found that the record was insufficient to resolve this question, and "further discovery . . . might well demonstrate facts sufficient to constitute a basis for jurisdiction."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).  After approximately three months of jurisdictional discovery, the record has not meaningfully changed.

Following recent Ninth Circuit law, to demonstrate "express aiming," a plaintiff must show that the out-of-forum defendant has regular sales in the forum and the defendant exercises control over the distribution of products to the forum.  *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1095 (9th Cir. 2023) (holding that "the sale must occur in the defendant's regular course of business.").  In *Briskin v. Shopify*, the Ninth Circuit crafted a more specific test for evaluating when a defendant that runs an interactive website or platform has regular sales and exercises control over product distribution in the forum.  The Ninth Circuit held that an interactive platform, as Defendants own here, "expressly aims its wrongful conduct toward" the forum "when its contacts are its own choice and not random, isolated, or fortuitous."  *Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025) (cleaned up) (holding that "'something more' than mere passive" access "was required to show express aiming at the forum . . .").

Here, DISH has not adequately alleged that Innetra made regular sales to United States customers, and that Innetra's contacts were "not 'random, isolated, or fortuitous.'"  *Briskin*, 135 F.4th at 758.  Jurisdictional discovery, conservatively viewed, shows that at the time of the events

4

alleged in DISH's complaint (2024) Innetra had no customers in the United States, and it has no customers in the United States now.  *See, e.g.*, Compl. ¶ 39; Plaintiff's Supp. Brief at 5; Decl. of Elna Paulette Belle at ¶ 4 ("Belle Decl.").  At most, DISH had two customers briefly in 2025.  Belle Decl. at ¶ 4.  Of the two customers Defendants identified, one brought in a gross revenue of $682.16, and was a "'Client For' two (2) months with a Signup Date of March 30, 2025 and a termination date of June 1, 2025." *Id*.  The other user signed up for Innetra on September 29, 2025, and "only created a profile and did not purchase any services from Innetra." *Id*. ¶ 5, Ex. 3.  This user "cancelled its subscription and was a client for 9 days." *Id*.  DISH submitted no contradictory discovery to indicate that Innetra has additional United States based customers.  *See* Plaintiff's Supp. Brief at 5.[1]  These two examples are too "random, isolated, or fortuitous" to establish that Defendants have regular sales in the United States.  *Briskin*, 135 F. 4th at 758.

The Court recognizes that other courts applying *Herbal Brands, Inc.* have found that even a low percentage of customers is adequate to show that a defendant made regular sales.  *See, e.g.*, *Briskin*, 135 F.4th at 757 (finding specific jurisdiction over defendant in California even though only 8% of defendant's worldwide merchants were located in California); *Shirokov v. Ardatovskiy*, No. 25-CV-02701-EMC, 2025 WL 2042224, at *2 (N.D. Cal. July 21, 2025) (holding that "somewhere between 5-8% of [defendants'] sales involved U.S. customers, which was sufficient to show that defendants "made regular sales to U.S. customers.").  However, here, at most Innetra has two examples of attenuated connections with United States customers.

Additionally, jurisdictional discovery shows that while Defendants operated an international website that could facilitate transactions with the United States, they did not make a

---

[1] DISH places substantial focus on its allegations that NagraStar, a company owned by DISH, "monitored numerous Pirate Services" and "observed 48,786 distinct instances in which the Pirate Services used computer servers assigned to Innetra to transmit the channels airing infringing works into the U.S." Plaintiff's Supp. Brief at 1.  DISH readily notes that "these transmissions did not go directly from Innetra's servers to Users in the U.S." *Id*.  It is not at all clear how this information is relevant to Innetra's contacts with the United States, when, in DISH's own description, it is the "Pirate Services" that are connecting transmissions to the United States-based users.  "[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

United States District Court
Northern District of California

conscious effort to cater to United States-based customers. DISH alleges that Innetra configures "its website, account creation tools, and policies in ways that reasonably contemplate U.S. users or operators serving U.S. users," by showing prices in U.S. Dollars by default and by permitting registration using a U.S. area code. Plaintiff's Supp. Brief at 4. Along similar lines, DISH points to the fact that Innetra's website states that Innetra "'protect[s] [its] customers from illegitimate DMCA claims.'" *Id*. DISH argues that these references to "DMCA" (the Digital Millennium Copyright Act), a United States law, indicate that Innetra was holding itself out to be friendly to United States based customers. Innetra counters by stating that these are standard e-commerce features, and "the United States Dollar is a global currency that makes transacting easy, and the list of phone codes includes approximately 240 unique phone code [sic] per country or territory and United States is one of them." Mot. at 14-15. The Court agrees. Coupled with the fact that Innetra had no United States customers in 2024, and at most two United States customers for a brief period in 2025, one of which did not make a purchase, DISH's allegations are not enough to show that Defendants cultivated a United States customer base to "expressly aim[] its wrongful conduct" to the United States. *Briskin*, 135 F.4th at 758.

Finally, DISH alleges that Innetra "entered into peering arrangements with two peers, NTT and Lumen, with a strong infrastructure in the U.S. to deliver content to Users in the U.S." Plaintiff's Supp. Brief at 2. DISH acknowledges that NTT and Lumen are not U.S. companies, but contends that Innetra worked with "NTT and Lumen to deliberately reach the United States." *Id*. at 3. Jurisdictional discovery confirms that Defendants' relationships were not with the U.S. subsidiaries of NTT or Lumen. Belle Decl., ¶¶ 8, 9. Discovery additionally shows that Innetra does not use any servers of NTT Germany or Lumen Netherlands, or their affiliates in the United States, and does not contract with those companies to use any servers in the United States. *Id*. ¶¶ 21, 22. Defendants state, and DISH does not dispute, that: "Innetra does not contract with any companies located in the United States for its global IP transit services"; "Innetra does not contract with any Content Delivery Networks (CDN) companies in the United States or use any CDN's located in the United States"; and "Innetra does not use any servers in the United States where content is stored or managed." *Id*. ¶¶ 18-20. The Court finds that Defendants' contacts with the

United States are "scant, fleeting, and attenuated" and are insufficient to support nationwide jurisdiction in the United States. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) ((holding that defendants' contacts with the United States, including giving a presentation on a cruise ship, sponsoring a reception and dinner tables, and occasional visits to cruise ships and advertising in various marine publications, "hardly constitute significant contacts" and declining to exercise jurisdiction under Rule 4(k)(2)).

Resolving any disputed facts in DISH's favor still does not show intentional conduct expressly aimed at the United States.[2]  The Court finds that DISH, even with jurisdictional discovery, has failed to meet its burden on at least demonstrating that Defendants purposefully directed their activities at the United States.  Because DISH has not met its burden to satisfy the first prong of the specific personal jurisdiction test, the Court need not reach the second and third prongs of the test.  *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017).

/ / /

/ / /

/ / /

---

[2] Each party filed objections to the opposing party's evidence submitted in support of their respective supplemental briefs.  ECF Nos. 58, 59.  Defendants object to one exhibit (ECF No. 52-4) and portions of the Gregory Duval Declaration (ECF No. 54) for lack of foundation and legal conclusions (FRE 704, 602/901).  Plaintiff objects to the Jeremy Rasmussen Declaration because Defendants allegedly did not disclose Rasmussen as a witness or expert, and to the Elna Paulette Belle Declaration (ECF No. 56-1) for lack of foundation or personal knowledge.  The Court did not rely on the contested evidence in the Duval or Rasmussen Declarations or Exhibits, and therefore need not rule on the evidentiary objections.  As to Plaintiff's objection to the Belle Declaration, Plaintiff cannot argue that Belle, a co-defendant in this case, lacks personal knowledge to form the basis of the declaration concerning management decisions, customers, and business contracts, while at the same time allege that "Belle managed the servers and network that the Pirate Services used to infringe the Works. . . . Belle is a guiding spirit and central figure in Innetra's infringement of the Works and therefore Belle is personally liable for such infringement."  Compl. ¶ 54.  The Court denies Plaintiff's objection to the Belle Declaration.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss for lack of personal jurisdiction.  Having already been granted jurisdictional discovery, the Court finds that further amendment would be futile.  This case is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: March 5, 2026

Noël Wise
United States District Judge

United States District Court
Northern District of California

8